UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>**NOT FOR PUBLICATION**</u>

---

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE CO., AND GEICO
CASUALTY CO.,

<u>**MEMORANDUM & ORDER**</u>

18-cv-5735-ERK-SJB

Plaintiffs,

– against –

DANIEL J. YOO, M.D., WESTERN JANEDA
ORTHOPEDICS OF NEW JERSEY, L.L.C.,
GREGORY S. TAMAGNINI, D.P.M., RICHARD
BRAVER, D.P.M, STAR HEALTH
MANAGEMENT, L.L.C., HACKENSACK
SURGERY CENTER, L.L.C.,

Defendants.

---

Korman, *J.*:

GEICO alleges that defendants conspired to submit fraudulent no-fault insurance reimbursements relating to medical treatment and facility fees incurred by car accident victims. I ordered the parties to address the advisability of transfer to the District of New Jersey in the interest of justice.

**BACKGROUND**

Hackensack Surgery Center is an ambulatory care facility located in New Jersey, managed by Star Health Management, a New Jersey limited liability company, and Dr. Richard Braver, a New Jersey podiatrist. Am. Compl. ¶¶ 4, 12, 14, 15, ECF No. 24. Braver is the managing member of both Hackensack Surgery Center and Star Health Management. *Id.* ¶ 14. Hackensack Surgery Center's business operates by "provid[ing] surgical facility space to physicians and other healthcare providers, and generated revenue," in part, "by charging facility fees to GEICO and

1

other automobile insurers in connection with the surgical procedures it hosted." *Id.* ¶ 77. "As a result, [its] business depended on patient referrals from physicians and other healthcare providers." *Id.* ¶ 78.

One of those physicians is Dr. Daniel J. Yoo, a New Jersey resident, who operates Western Janeda Orthopedics, a New Jersey-based medical professional limited liability company. *Id.* ¶¶ 4, 11. Beginning in 2010, Yoo began referring patients to Hackensack Surgery for surgical procedures. *E.g.*, *id.* ¶ 91. In 2014, Yoo also began to operate Western Janeda out of Flushing, New York, without registering the business with New York authorities. *Id.* ¶¶ 106, 110. Around that same time, Yoo "began to refer large numbers of GEICO insureds from the Flushing Clinic to Hackensack Surgery." *Id.* ¶ 110. In turn, Hackensack Surgery Center billed GEICO for facility fees corresponding to treatment for car accident victims. *Id.* ¶ 310. These no-fault insurance benefits—"Personal Injury Protection" or "PIP" benefits—are assignable to healthcare providers by insureds under New Jersey and New York law. *Id.* ¶¶ 25, 39.

In return for referring patients to Hackensack Surgery, Yoo received an ownership interest in the facility, which fluctuated depending on the volume of his referrals. *Id.* ¶¶ 79, 81, 84, 87. For example, Yoo's ownership interest in Hackensack Surgery increased "from 10 percent in 2011, to approximately 14 percent in 2012, to approximately 16 percent in 2013, to approximately 23 percent in 2014." *Id.* ¶ 87. Yoo did not make a financial investment in the facility in exchange for this ownership interest; rather, "the primary 'investment' that Yoo made in Hackensack Surgery was his agreement to provide a steady stream of patient referrals." *Id.* ¶ 86.

Hackensack Surgery never disclosed Yoo's ownership interest to the New Jersey Department of Health, as required by law. *Id.* ¶¶ 83, 88, 90, 99. Indeed, on December 8, 2014, the New Jersey Department of Health sent Braver, as managing partner of Hackensack Surgery, a

letter detailing the facility's noncompliance with New Jersey law regarding the disclosure of Yoo's ownership interest. *Id.* ¶ 100. Independently, such kickback schemes are illegal. *See* N.J.A.C. § 13:35-6.17(c)(1). Because insurers are only required to reimburse entities who are in compliance with state licensing laws and regulations, *see* 11 N.Y.C.R.R. § 65-3.16(a)(12); *Varano, Damian & Finkel, L.L.C. v. Allstate Ins. Co.*, 366 N.J. Super. 1, 6 (App. Div. 2004), GEICO alleges that Hackensack Surgery's requests for PIP reimbursements were fraudulent.

In addition to the fraudulent facility fees, GEICO alleges that the services and procedures billed by Yoo included overcharges for minor injuries, falsified visit times, and unnecessary surgical procedures and follow-up exams. *See* Am. Compl. ¶¶ 135-286. Moreover, GEICO alleges that Yoo enlisted Dr. Gregory S. Tamagnini, a New Jersey podiatrist, to assist in shoulder surgery and other procedures, in violation of applicable licensing and practice standards. *Id.* ¶¶ 277-286. This alleged fraud is laid out in detail in the amended complaint, which highlights several pertinent, patient-specific examples. *See id.* ¶¶ 135-286. GEICO alleges that it is not responsible for those payments either.

The majority of the allegedly fraudulent facility fee reimbursement requests made to GEICO by Hackensack Surgery involve the treatment of New Jersey patients, although some claims relating to New York patients were submitted to GEICO's offices in the Eastern District of New York. *Compare id.* Ex. 2, ECF No. 24-3 (representative sample of Hackensack Surgery claims listing more than 2,000 allegedly fraudulent claims), *with* Perdomo Decl. ¶ 7, ECF No. 40-2 (noting that Hackensack Surgery "submitted more than 250 claims to GEICO under New York automobile insurance policies" to GEICO's offices in New York). It is unclear how many of Western Janeda's fraudulent claims involved New York patients treated by Yoo in New York. *Compare* Am. Compl. ¶ 109 ("[P]rior to 2014, Western Janeda unlawfully operated in New York

on only a handful of occasions.") *and id.* ¶ 110 (noting that in 2014 Yoo began to operate in New York "on a regular basis"), *with* Am. Compl., Exs. 1, 1a, ECF Nos. 24-1, 24-2 (representative sample of Western Janeda claims, listing about 1,800 of 6,100 claims submitted before the year 2014 without specifying which involved New York patients treated in New York).

Based on the events described above, GEICO sets forth thirteen causes of action. First, it seeks a declaratory judgment that Hackensack Surgery and Western Janeda have no right to the reimbursements they sought. *Id.* ¶¶ 328-335 (First Cause of Action). Next, it asserts civil RICO claims against Yoo, Braver, Tamagnini, Star Health, and Western Janeda under 18 U.S.C. § 1962(c) and (d). *Id.* ¶¶ 336-342, 343-349, 374-380, 381-387 (Second, Third, Eighth, and Ninth Causes of Action). GEICO also asserts common law fraud against all defendants, *id.* ¶¶ 350-356, 357-364, 388-394, 395-402 (Fourth, Fifth, Tenth, and Eleventh Causes of Action), and unjust enrichment against all defendants, *id.* ¶¶ 365-370, 403-408 (Sixth and Twelfth Causes of Action), Finally, GEICO brings claims under the New Jersey Insurance Fraud Prevention Act against all defendants. *Id.* ¶¶ 371-373, 409-411 (Seventh and Thirteenth Causes of Action).

After Braver, Star Health Management, and Hackensack Surgery Center (collectively, "moving defendants") moved to dismiss GEICO's federal RICO and state law claims for lack of personal jurisdiction, improper venue, and failure to state a claim, ECF No. 39, I determined that transfer to the District of New Jersey might be appropriate and ordered the parties to address the advisability of transfer, 7/26/2019 Order.

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to

any district or division to which all parties have consented." 28 U.S.C. § 1404(a).[1] A court may *sua sponte* transfer an action under Section 1404(a) after giving both parties notice and an opportunity to be heard. *See Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979). *See generally* Wright & Miller, Federal Practice and Procedure § 3844 (4th ed. 2013). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *see also Lykes Bros. Steamship Co. v. Sugarman*, 272 F.2d 679, 680 (2d Cir. 1959) (deciding whether to order transfer is a matter "peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation").

> Among the factors to be considered in determining whether to grant a motion to transfer venue "are, *inter alia*, (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair*, 462 F.3d at 106-07). Transfer is appropriate when clear and convincing evidence weighs in its favor. *See id.* at 114.

Nearly all the relevant factors listed above weigh in favor of transfer to the District of New Jersey. First, the District of New Jersey is the most convenient forum for the witnesses and parties. All defendants reside in New Jersey, and GEICO also has offices in New Jersey where the New Jersey-based reimbursement requests were processed. *See Liberty Mut. Ins. Co. v. Fairbanks Co.*,

---

[1] It is undisputed that this action could have been brought in New Jersey, as all defendants reside there and substantial events giving rise to the claims took place in New Jersey. *See* 18 U.S.C. § 1965(a); 28 U.S.C. § 1391(b)(1), (2). *See generally Dealtime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750, 754-55 (S.D.N.Y. 2000).

17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014) ("The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant."); *Freeman v. Hoffmann-La Roche Inc.*, 2007 WL 895282, at *2 (S.D.N.Y. Mar. 21, 2007) (parties' residence within transferee forum favored transfer). Second, relevant documents and other evidence are likely to be found in New Jersey, where Hackensack Surgery, Western Janeda, and Star Health are headquartered and operate and GEICO has offices. *See Forsher v. J.M. Smucker Co.*, 2019 WL 235639, at *4-5 (E.D.N.Y. Jan. 16, 2019) (transfer to forum where "misleading . . . statements or omissions were conceived" was appropriate when considering potential "sources of proof"). Nevertheless, I do not weigh the location of documents heavily in my analysis. *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly."). Third, as a large, nationwide insurance company, GEICO will face no difficulty litigating in the District of New Jersey as opposed to the Eastern District of New York.

Significantly, "the locus of operative facts" is within the District of New Jersey. The facility fee reimbursements requested by Hackensack Surgery all involve procedures performed in New Jersey. While Hackensack Surgery "submitted more than 250 claims to GEICO under New York automobile insurance policies," which were processed by GEICO's offices located within the Eastern District of New York, Perdomo Decl. ¶ 7, the vast majority of fraudulent claims appear to have little to no connection to this district. Indeed, GEICO's argument that "more than 1/3 of the total damages that GEICO seeks from the Hackensack Surgery Defendants" are based on New York automobile insurance policies,  Ltr. 3, ECF No. 55, obscures the fact that the bulk of the more than $6,000,000 in damages sought in this action are based on conduct occurring in New

Jersey. Other critical aspects of the alleged fraudulent scheme also took place in New Jersey, such as Braver and Star Health's arrangement to provide Yoo with an ownership interest in Hackensack Surgery in exchange for referrals, and Hackensack Surgery's subsequent failure to disclose that arrangement to New Jersey authorities. *See, e.g.*, *Forsher*, 2019 WL 235639, at *6 (district where "strategic decisions" were made that "form[ed] the basis of Plaintiff's claims" was "'a locus of operative facts"); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *9 (Sept. 22, 2015) (similar).

The only factor possibly weighing against transfer is the plaintiff's choice of forum. Even so, "courts generally accord less deference to a plaintiff's choice of forum when the forum does not have a strong connection with the locus of the operative facts," *Ahmed v. T.J. Maxx Corp.*, 777 F. Supp. 2d 445, 451 (E.D.N.Y. 2011), and where the plaintiff resides outside of the district, *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 262 (E.D.N.Y. 2010). Accordingly, this factor does not weigh strongly against transfer. Moreover, unlike *Arabi v. Javaherian*, 2014 WL 3892098, at *10 (E.D.N.Y. May 1, 2014), it cannot be said here "that the scales tip evenly," warranting "deference to the plaintiff's choice of forum." Rather, the locus of facts is in New Jersey, weighing heavily on the scales.

Finally, transfer to the District of New Jersey is in the interests of justice. *See generally* Wright & Miller, Federal Practice and Procedure § 3854 (4th ed. 2013). Specifically, "the locus of operative facts as well as the interests of efficiency and fairness favor a [New Jersey] forum." *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 113. Moreover, the parties agree that New Jersey law governs GEICO's common law claims,[2] and GEICO further asserts claims under New Jersey statutes. *See*

---

[2] *See, e.g.*, Mot. Dismiss 29-30 (citing New Jersey law), ECF No. 39-1; Opp. Br. 40-41, ECF No. 40 (not disputing that New Jersey law applies; citing cases from various federal judicial districts, including New Jersey).

7

*Dealtime.com*, 123 F. Supp. 2d at 757 (noting that where "issues will be governed by the state law of one forum rather than the other, then the greater familiarity of the federal court sitting in that forum militates somewhat in favor of transfer"). The applicable New Jersey law pertaining to medical licensing and practice standards is of a decidedly local character, making venue in New Jersey preferable where, as here, such claims predominate.[3]

## CONCLUSION

This action is transferred to the District of New Jersey.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
August 8, 2019

Edward R. Korman
United States District Judge

---

[3] Plaintiff's belated assertion that they "intend to seek leave to file a Second Amended Complaint" that "will add a number of additional, New York-based Defendants" appears to be an attempt to bolster their efforts to avoid a change of venue. *See* Ltr. 7, ECF No. 55. This does not seem to be the appropriate purpose of yet another amended complaint.